This appeal presents the questions whether an insurance agency, under the facts of this case, owed any duty to notify an insured that his homeowner's policy had been canceled and whether there was evidence that the agency had agreed to procure insurance for its insured and had failed to do so. *Page 1260 
The appeal is from a summary judgment entered in favor of the defendants, Marshall Johnson, individually, and the Johnson Insurance Agency, a corporation. Appellant, Paul Cornett, in his complaint, alleges that Marshall Johnson and the Johnson Insurance Agency, Inc. ("the Johnson Agency"), negligently failed to notify him that his insurance had been canceled and that each defendant had breached a duty owed to him as an insured and as an applicant for insurance. We find that there is a genuine issue of fact whether there existed, under the facts of this case, an agency relationship between Cornett and the Johnson Agency. We also find that there is a genuine issue of fact as to whether the Johnson Agency owed Cornett a duty to procure new insurance for him once his policy with Capital Assurance, Inc., had been canceled; therefore, we reverse this cause as to the Johnson Agency on both Cornett's claim of alleged negligence and on his claim of a breach of a fiduciary duty. However, we hold that summary judgment was appropriate as to Cornett's claims against Marshall Johnson personally.
The suit arose from the following facts.
On March 16, 1986, the Johnson Insurance Agency, Inc., procured a homeowner's insurance policy for Paul Cornett, covering his mobile home. Federal Guaranty Financial Corporation was named as the loss payee in the policy, because it had provided Cornett with the financing he needed to purchase the mobile home. Alfa Financial Corporation is the successor in interest to Federal Guaranty Financial Corporation. In March 1987, the Johnson Agency informed Cornett that his annual insurance premium was due. Cornett promptly paid his premium. At that time, the Johnson Agency procured a homeowner's insurance policy on behalf of Cornett with Capital Assurance Inc., through J.R. Kitchens, Inc. ("the Kitchens Company"), an agent of Capital Assurance, Inc. Alfa was listed as a loss payee on this policy, as its predecessor had been on the 1986 policy.
Over the next year, Cornett filed two claims involving theft with the Johnson Agency. These claims were handled entirely by employees of the Johnson Agency. At all times, the Johnson Agency was the company Cornett contacted to pay his premiums, to add additional coverage, and to submit claims.
After the second theft claim had been filed by Cornett, the Johnson Agency made on the claim form a notation that it involved the second theft claim within a year. The Kitchens Company decided to investigate Cornett's use of the mobile home. At that time, there was some speculation that Cornett was not using the mobile home as a personal residence, as he had stated in the application, but that he was, in fact, using the mobile home as an office for a used automobile lot. Such a use would increase the amount of risk that the insurance company would have to bear. Based on its investigations, the Kitchens Company decided to terminate Cornett's coverage with Capital Assurance because of misrepresentations he had made on his application for insurance. The Kitchens Company claims that it sent notice of the cancellation to Cornett, the Johnson Agency, and Alfa. Cornett denies that he received any notification of the cancellation.
In July 1988, Capital Insurance refunded the unused portion of Cornett's premium by crediting the amount to the Johnson Agency account. This was acknowledged by the Johnson Agency in August 1988; however, the money was not returned to Cornett until November 1988, one day after he had made a claim with the agency for a loss by fire.
There is evidence that when Alfa learned of the cancellation, Ms. Pamela Dent, an agent of Alfa, wrote a letter to Cornett informing him that his insurance had been canceled because of nonpayment of the premium. There is evidence that Ms. Dent sent a second letter to Cornett stating that Alfa had purchased insurance to protect its interest in Cornett's mobile home. Ms. Dent testified that Alfa did not purchase insurance to protect Cornett's interest in the mobile home because she thought that Cornett was protected by another insurance policy. Ms. Dent said she based this belief on the fact that Mr. Ron Stone, the *Page 1261 
local Alfa agent who had lent the money to Cornett, had telephoned the Johnson Agency and talked to an employee there. That employee allegedly stated that Cornett's policy had been canceled because of the claims that he had submitted, but that the Johnson Agency was going to place his insurance with another company. That employee denies having that conversation with Ron Stone.
Cornett testified that he did not receive the notice of cancellation mailed by the Kitchens Agency. However, he did state that he had received the letter from Ms. Dent stating that his insurance had been canceled because of the nonpayment of his premiums. Cornett testified that he called the Johnson Agency and was informed that the cancellation of his insurance policy had been a mistake, and that the mistake would be taken care of. Cornett testified that he did not worry about the cancellation, because he had received letters similar to this one previously.
On November 21, 1988, Cornett's mobile home burned. When he made a claim with the Johnson Agency, he learned that his policy had been canceled. On the day after he learned that his policy had been canceled, he received the refund of his unused insurance premium from the Johnson Agency. The Kitchens Company had credited Johnson Agency's account with the amount of Cornett's unearned premium when it canceled the policy.
Cornett asserts two separate claims against Marshall Johnson and the Johnson Insurance Company. He first claims that they negligently failed to notify him that his insurance policy had been canceled. Second, he claims that they breached a fiduciary duty that was owed him in not obtaining insurance for him once his policy had been canceled by Capital Assurance. Even though Cornett named Marshall Johnson as a defendant in this lawsuit, he does not allege any wrongs committed by Marshall Johnson individually, and the evidence submitted on the motion for summary judgment does not indicate that Cornett ever had any dealings of any kind with Marshall Johnson. We hold that summary judgment was appropriate as to Marshall Johnson.[1]
We now address Cornett's claims that the Johnson Agency negligently failed to inform him that his insurance policy had been canceled and that the agency had breached a fiduciary duty owed him by not obtaining new insurance for him once his insurance policy had been canceled by Capital Assurance.
 I
Cornett seeks to fasten liability on the Johnson Agency because he claims that an agency relationship existed between him and the Agency, and that, based on that agency relationship, Johnson Agency had a duty to inform him that his policy had been canceled. The Johnson Agency denies that there was such a relationship between it and Cornett as to place it under a duty to inform Cornett of any policy cancellations.
Section 27-23-25, Code of Alabama 1975, provides that adequate notice of cancellation exists when the notice of cancellation has been mailed to the insured, and Alabama case law has interpreted this Code section as meaning that an insurance company can prove adequate notice of cancellation by proving that it mailed the notice, regardless of whether the insured actually received the notice. Strickland v. AlabamaFarm Bureau Mutual Cas. Ins. Co., 502 So.2d 349
(Ala. 1987), Hilliar v. State Farm Mutual Auto. Ins.Co., *Page 1262 451 So.2d 287 (Ala. 1984). Those cases, of course, involved situations where an insured had dealt directly with an insurance company or that company's agent. As we understand Cornett's theory of liability, he contends that the Johnson Agency, under the facts of this case, established an agency relationship with him. He contends that the Johnson Agency agreed to obtain an insurance policy that would insure his mobile home, and that the Agency did, in fact, obtain insurance for him with Capital Assurance, through its agent, the Kitchens Company. He claims that the Johnson Agency handled any claims that he made on his insurance policy, informed him when his premiums were due, and answered any questions that he had regarding his insurance policy, and he claims that when he inquired about the cancellation notice he admitted receiving from Dent, he was told to ignore the notice because it was a mistake.
Based on these facts, we find that substantial evidence exists to support the conclusion that an agency relationship existed between the Johnson Agency and Cornett. Therefore, summary judgment should not have been entered on his negligence claim. Under Alabama case law, the existence and scope of a principal-agent relationship are questions of fact to be determined by a jury. Potomac Leasing Co. v. Bulger,531 So.2d 307 (Ala. 1988); Calvert v. Casualty ReciprocalExchange Ins. Co., 523 So.2d 361 (Ala. 1988).
We hold that the question whether the Johnson Agency, under the facts of this case, was acting solely as a broker or was acting as an agent of Cornett, was a fact question for a jury. If the jury finds that an agency relationship did exist, then a genuine issue of fact exists as to whether the Johnson Agency was negligent, as alleged.
 II
Cornett asserts also that the Johnson Agency breached a fiduciary duty that it owed him when it failed to procure insurance for him after his policy with Capital Assurance, Inc., had been canceled. He cites several cases involving the responsibility of an insurance agent or broker to obtain insurance for an applicant or insured once an agreement has been reached wherein the insurance agent or broker has agreed to obtain the required insurance.
There is evidence that Cornett and the Johnson Agency reached an agreement by which the Johnson Agency was to procure insurance for Cornett after Cornett's policy had been canceled with Capital Assurance, Inc. For example, there is evidence that a statement was made by a Johnson Agency employee to a representative of Alfa that the Johnson Agency would place Cornett with another insurance company. Cornett claims that this evidence would support a finding that the Johnson Agency had a duty to find him another insurance company; and he claims that the Johnson Agency breached this duty when it failed to procure insurance for him with another company.
Cornett cites Montz v. Mead Charles, Inc.,557 So.2d 1 (Ala. 1987) in support of his contention. In that case the insurance company had agreed to procure insurance for the applicant, had accepted the premium for the insurance, and had issued the applicant a binder. The insurance was canceled because the insurance company had failed to supply the applicant with the necessary forms in order to obtain the insurance. In the Montz case, there was an agreement between the insurance company and the applicant for insurance that insurance would be procured for the applicant. In our review of the Montz case, we held:
 " ' "[W]hen an insurance agent or broker, with a view to compensation, undertakes to procure insurance for a client, and unjustifiably or negligently fails to do so, he becomes liable for any damage resulting therefrom. (See annotation at 29 A.L.R.2d 171.)" Timmerman Ins. Agency, Inc. v. Miller, 285 Ala. 82, 85, 229 So.2d 475, 477 (1969).
 " 'Once the parties have come to an agreement on the procurement of insurance, the agent or broker must exercise reasonable skill, care, and diligence in effecting coverage. Crump v. Geer *Page 1263 Brothers, Inc., 336 So.2d 1091
(Ala. 1976); Waldon v. Commercial Bank, 50 Ala. App. 567, 281 So.2d 279 (1973). When the agent or broker has failed in the duty he assumes, the principal may sue either for breach of the contract or, in tort, for breach of the duty imposed on the agent or broker." Waldon v. Commercial Bank, supra. 361 So.2d at 1065.' "
557 So.2d at 4, quoting Highlands Underwriters Ins. Co. v.Elegante Inns, Inc., 361 So.2d 1060 (Ala. 1978).
We find a jury question as to whether there was an agreement to procure insurance; therefore, this case is similar to theMontz case. In addition to the evidence that the Johnson Agency assumed the responsibility of procuring insurance for Cornett after his policy was canceled by Capital Assurance, there was evidence that the Johnson Agency, after the insurance policy had been canceled, retained the unearned premium and did not refund it to Cornett until after the loss had occurred. This evidence tends to support Cornett's claim that the Johnson Agency was under a duty to obtain new insurance for him once his policy with Capital Assurance, Inc., had been canceled, and that the agency breached this duty when it failed to obtain the new insurance.
Based on the evidence, we find that a genuine issue of fact exists concerning whether Johnson Agency breached a duty owed to Cornett by not procuring insurance for him.
Therefore, we affirm in part; reverse in part; and remand.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and SHORES, HOUSTON and KENNEDY, JJ., concur.
[1] The Johnson Insurance Agency, Inc., is a corporation legally doing business in Cullman County, Alabama. Under Alabama law, corporations are treated as entities separate and distinct from the individuals who own them as stockholders or who manage them as directors or officers. Read News Agency,Inc. v. Moman, 383 So.2d 840, 843 (Ala. 1980). Individual responsibility is not imposed upon the officers of a corporation unless there is a showing that, through abuse or manipulation, the corporate form was used to evade personal responsibility. Jefferson Pilot Broadcasting Co. v. Hilary Hogan, Inc., 617 F.2d 133, 136 (5th Cir. 1980). InCohen v. Williams, 294 Ala. 417, 318 So.2d 279 (1975), this Court stated that the determination of whether a person will be held individually responsible will be determined on a case-by-case basis.